UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTIAN FRANCIS S., <br><br>   Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], <br><br>   Defendant. | Case No.  2:20-CV-00528-REP <br><br> **MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Christian Francis S.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 15) appealing the Social Security Administration's final decision finding that he had not become disabled prior to December 31, 2012 and was not, therefore, entitled to social security disability income.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a man in his early sixties with a history of recurrent ventral and incisional hernias.  AR[2] 450-458.  On July 19, 2018, Petitioner filed an application for social security disability income ("SSDI") as well as an application for supplemental security income ("SSI"),

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted, therefore, as the respondent in this suit.  Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

[2] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 14).

**MEMORANDUM DECISION AND ORDER - 1**

alleging disability due to respiratory failure, chronic obstructive pulmonary disease ("COPD"), diabetes, tachycardia, abdominal hernias, needing oxygen, and diastatis (separation of the abdominal muscles). AR 15, 217. Petitioner originally asserted a disability onset date of October 10, 2007, more than ten years before he filed for disability benefits. AR 212.

After an initial review, the Social Security Administration concluded that Petitioner's COPD was in fact disabling. AR 84. The Social Security Administration determined, however, that this condition had an established onset date of July 19, 2018, not October 10, 2007. *Id.* Based on these findings, the Administration approved Petitioner's claim for SSI benefits. *Id.* Because Petitioner's disability onset date (July 19, 2018) fell after his date last insured (December 31, 2012), the Administration denied Petitioner's claims for SSDI benefits both initially and on reconsideration. AR 15, 76, 96. The Administration found that the evidence Petitioner presented was insufficient to establish that any of his allegedly disabling conditions had become severe prior the expiration of his insurance period. *Id.*

Petitioner elected to dispute the denial of SSDI benefits by requesting a hearing in front of an Administrative Law Judge ("ALJ"). AR 15. On April 16, 2020, this claim went to a telephonic hearing before Administrative Law Judge ("ALJ") Lori Freund. AR 15, 21. At the hearing, Petitioner voluntarily amended his disability onset date to December 31, 2012, the date he was last insured for the purposes of receiving SSDI benefits. AR 33. Even with this change, the ALJ issued a decision that was unfavorable to Petitioner. AR 12-21.

Petitioner appealed this decision to the Appeals Council. The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1-6.

**MEMORANDUM DECISION AND ORDER - 2**

Having exhausted his administrative remedies, Petitioner filed this case. Petitioner raises a single point of error, related to his history of abdominal hernias. Specifically, Petitioner argues that substantial evidence does not support the ALJ's finding that Petitioner's abdominal hernias were not a severe impairment as of December 31, 2012. Pt.'s Br. at 8 (Dkt. 15).

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such

**MEMORANDUM DECISION AND ORDER - 3**

cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

**MEMORANDUM DECISION AND ORDER - 4**

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be

**MEMORANDUM DECISION AND ORDER - 5**

established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner last met the insured status requirements of the Social Security Act on December 31, 2012, the same day as Petitioner's amended disability onset date.  AR 17.  This finding meant that Petitioner was required to show he was disabled as of this date to receive SSDI benefits.  AR 16.

The ALJ concluded that Petitioner had not presented sufficient evidence to make this showing.  Specifically, the ALJ found that Petitioner suffered from no severe impairments on December 31, 2012.  AR 18.  In making this finding, the ALJ acknowledged that Petitioner had a history of hernias and had a recurrent hernia on the date last insured.  AR 19.  The ALJ concluded, however, that this condition did not significantly limit Petitioner's ability to perform basic work-related activities, and thus, was not severe.  AR 18.  The ALJ, therefore, found that Petitioner was not disabled on the relevant date.  *Id.*

**MEMORANDUM DECISION AND ORDER - 6**

**DISCUSSION**

Petitioner's sole challenge on appeal is that the ALJ erred in finding that his hernias did not constitute a severe impairment on December 31, 2012.  An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1522(a).  This is not a high standard.  *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (explaining that Step Two is a "de minimis screening device used to dispose of groundless claims").

As the Social Security Administration has long acknowledged, "the severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working."  Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *2 (January 1, 1985).  It follows that ALJs must exercise "[g]reat care . . . in applying the not severe impairment concept."  *Id.* at *4.  For example, before rejecting a claim at Step Two, an ALJ must conduct "a careful evaluation of the medical findings which describe" the impairment and issue "an informed judgment about [the impairment's] limiting effects on the individual's physical and mental [abilities] to perform basic work activities."  *Id.*  In addition, "[i]f the medical evidence establishes only a slight abnormality . . . which has no more than a minimal effect on a claimant's ability to do basic work activities, but evidence shows that the person cannot perform his or her past relevant work because of the unique features of that work, a denial at the 'not severe' step of the sequential evaluation process is inappropriate."  *Id.*

The ALJ's decision does not fully accord with these standards.

**MEMORANDUM DECISION AND ORDER - 7**

A. <u>The Medical Evidence of Petitioner's Hernias</u>

It is undisputed that Petitioner "experienced several abdominal hernias in the 1990s that were surgically repaired." AR 19; *see also* AR 451-454. In 1999 and 2001, over a decade before his alleged disability onset date, Petitioner underwent three evaluations to assess the impact of this history on his ability to work. AR 552-559, 561-563. At the time of those evaluations, Petitioner was not showing signs of any ventral hernias. AR 555, 556. The evaluating doctors – Dr. John Sonneland, Dr. Howard B. Kellogg, and Dr. Suzanne Stepanski – agreed, however, that Petitioner's history of recurrent hernias was a permanently impairing condition, which restricted Petitioner's ability to work. AR 555, 558-559, AR 563. Dr. Stepanski, the doctor who conducted the final evaluation of Petitioner in August 2001, found that Petitioner would have "significant difficulty" changing from a lying to a sitting position, could only occasionally stand, sit, or walk, up to 30% of a work cycle, could not push or pull heavy objects, could lift no more than 20 pounds, and should not engage in significant amounts of bending, stopping, kneeling, crouching, and crawling. AR 563.

After these evaluations, Petitioner returned to work for several years, laboring at levels far beyond those the doctors predicted he could (or perhaps recommended he should). AR 225. For example, Petitioner reported regularly standing five hours at work, sitting five hours a day at work, crouching and kneeling a combined hour and a half a day, and lifting and carrying equipment weighing up to 100 pounds. AR 226. In 2007, Petitioner stopped working. AR 218, 454.

At no point during this period did Petitioner seek treatment for recurrent hernias. AR 19. The next time Petitioner saw a doctor for this condition was in July 2012, about five months before his disability onset date. *Id.* This visit was with Jonathan Spitz, M.D., an independent

**MEMORANDUM DECISION AND ORDER - 8**

medical evaluator.  When he met with Dr. Spitz, Petitioner reported discomfort in his abdomen, which was exacerbated by lifting, twisting, golfing, and hiking.  AR 454.  A physical examination revealed that Petitioner had a recurrent ventral hernia approximately four centimeters in diameter.  AR 456.  Dr. Spitz noted that Petitioner had "had this hernia for some time without significant symptomatology."  AR 457.  Based on this presentation and based on Petitioner's complicated surgical history, Dr. Spitz favored "expectant nonsurgical management" over surgical repair.  AR 456-457.

In January 2013, about a week after his disability onset date, Petitioner underwent a surgical consult with Dr. Spitz regarding his hernia.  AR 461.  Notes from the visit indicate that the hernia was causing "some discomfort" and that it had been present for many months with symptoms gradually increasing and more symptoms recently.  *Id.*  The hernia was causing Petitioner "increased problems with activity."  *Id.*  Dr. Spitz discussed the pros and cons of surgery to repair the hernia and recommended Petitioner receive a CT scan.  AR 462.

Petitioner did not immediately receive this scan and did not seek treatment for his hernia throughout the rest of 2013.[3]  Nor did he complain about symptoms from his hernia when visiting his primary care doctor during this year.  AR 429, 433.

Petitioner next sought treatment for the hernia in January 2014, returning to Dr. Spitz for a second surgical consult.  AR 465.  At this visit, Petitioner had no new complaints and continued to report "some discomfort" from the hernia.  *Id.*  Dr. Spitz's evaluation confirmed that the hernia had not appreciably changed over the last year.  AR 466.  Dr. Spitz concluded that

---

[3] According to a later record, Petitioner did receive another evaluation of his hernias in March 2013, as part of his effort to receive compensation for the condition from the Department of Labor and Industries.  AR 478.  It does not appear that a copy of this evaluation is included in the administrative record.  Nor is there any indication he received any treatment for hernias at that time.  *Id.*

**MEMORANDUM DECISION AND ORDER - 9**

either surgical repair or expectant therapy would be a reasonable treatment option. *Id.* In making this recommendation, Dr. Spitz specifically noted that surgery could be "safely" deferred and used for progression of symptoms (increased pain). AR 467.

Petitioner did not pursue surgery. Nor did he complain of abdominal pain to his primary care doctor or seek other treatment for the hernia the rest of 2014. AR 422, 426. As best the Court can tell, the next time Petitioner sought care for, or evaluation of, his hernias was in the fall of 2016. AR 478. At some point round this time, Petitioner tried to seek additional compensation for his hernias from the Department of Labor and Industries. AR 476. As part of this claim, Petitioner underwent another independent evaluation of his hernias on January 14, 2017. *Id.* This evaluation was completed by Dr. Daniel F. Neuzil. *Id.*

Dr. Neuzil reviewed Petitioner's medical records, including Dr. Spitz's prior evaluations and treatment records. AR 477-478. Dr. Neuzil also physically examined Petitioner and considered a CT scan of Petitioner's abdomen. AR 478-479. This examination revealed that Petitioner no longer had an active hernia and did not need any further treatment. AR 479, 481. The review and evaluation confirmed, however, that Petitioner had a past history of recurrent hernias and also had diastasis, related to his previous hernia operations and to obesity and smoking. AR 479. Given these conditions, Dr. Neuzil found that Petitioner's "only restrictions to work are no heavy lifting over 25 to 30 pounds, but other than that he is employable." AR 479. In short, Dr. Neuzil found that Petitioner's condition had not objectively worsened since his last independent medical evaluation. AR 483. Based on this opinion, it appears Petitioner settled his claim with the Department of Labor and the claim was closed. AR 392, 388.

While Petitioner reported issues with continuing abdominal pain to his primary care doctor on a few occasions after Dr. Neuzil's evaluation (AR 388, 392), he did not have recurring

**MEMORANDUM DECISION AND ORDER - 10**

hernias at those times and his doctor never identified a clear etiology for the pain. AR 395, 389. More importantly, his doctor did not issue any opinions regarding any functional limitations caused by Petitioner's condition or how long these limitations, if any, had lasted. In other words, his primary care doctor did not issue any findings that would have shed light on the severity of Petitioner's condition in 2012.

> B. The ALJ failed to consider that every evaluating doctor to issue an opinion on the matter agreed that Petitioner's history of hernias and hernia repairs restricted Petitioner's ability to work.

In outlining Petitioner's medical history and the opinion evidence, the ALJ only discussed the views of two of the five doctors who evaluated the ongoing impact of Petitioner's history of recurrent hernias and hernia repairs. AR 19-20. This was an error. Before finding a claimant's medical conditions are not severe, an ALJ must carefully review the medical record and address and explain the ALJ's rejection of any "significant probative evidence." *Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) (the Secretary may not reject "significant probative evidence" without explanation); *see also* SSR 85-28, 1985 WL 56856, *4.

Here, Petitioner underwent medical evaluations of his hernias with five doctors between 1999 and 2017: Dr. Sonneland (AR 555),[4] Dr. Kellogg (AR 552-559), Dr. Stepanski (AR 561-563), Dr. Spitz (AR 450-458), and Dr. Neuzil (AR 476-483).

Four of these doctors – Dr. Sonneland, Dr. Kellogg, Dr. Stepanski, and Dr. Neuzil – issued opinions about the ongoing impact of Petitioner's history of recurrent hernias and hernia repairs. These doctors all agreed that Petitioner's condition restricted his ability to work. For example, Dr. Sonneland opined that Petitioner had a 20% permanent partial impairment and

---

[4] The Court was unable to locate a copy of this evaluation in the record, but its contents are summarized in Dr. Kellogg's 2001 evaluation. AR 555.

**MEMORANDUM DECISION AND ORDER - 11**

should not lift more than 25 pounds. AR 555, 559. Dr. Kellogg agreed. AR 559. Dr. Stepanski endorsed even more extensive limitations and felt that Petitioner should never lift more than 20 pounds. AR 563. Finally, Dr. Neuzil found that Petitioner should not lift over 25 to 30 pounds. AR 479. Dr. Spitz did not issue any contrary or competing findings.[5]

The ALJ failed to consider the combined weight of these opinions. This is problematic. As Petitioner emphasizes, limitations on basic work activities include restrictions on the ability to lift. 20 C.F.R. § 404.1522(a). Here, four doctors agreed that Petitioner should never lift more than 20-30 pounds. AR 559, 563, 479. This includes doctors who saw Petitioner both before and after his disability onset date. *Id.* Troublingly, the ALJ's opinion completely ignores the opinions of three of these doctors – Dr. Sonneland, Dr. Kellogg, and Dr. Neuzil – and never explains why or if the ALJ is rejecting these opinions.

This error is not harmless. While the ALJ did summarize and discuss the opinions of Dr. Stepanski, the Court is skeptical that these reasons could justify rejecting the permanent lifting restrictions endorsed by all four evaluating doctors. AR 20. The explanation the ALJ gave for rejecting Dr. Stepanski's opinions was that (i) this evaluation was supported at the time it was provided in 2001, but was inconsistent with later evidence of Petitioner's condition and (ii) was "too remote" from Petitioner's alleged disability onset date to be reliable. *Id.* These may have

---

[5] The focus of Dr. Spitz's evaluation was to determine if there were legitimate grounds to reopen Petitioner's worker's compensation claim. AR 450-458. In his report, Dr. Spitz noted that Petitioner had a hernia on the date of the evaluation and collected information about the symptoms Petitioner was experiencing as a consequence of that particular hernia. AR 454-456. Because Dr. Spitz believed that Petitioner's current hernia was not causally related to the industrial injury that formed the basis for Petitioner's original claim, Dr. Spitz recommend that the claim remain closed. AR 456-457. Relevant here, Dr. Spitz did not issue any opinions about Petitioner's preexisting and previously compensated hernia-related work restrictions. AR 450-458. For example, Dr. Spitz never indicated how much or little Petitioner could safely lift given his "complex past surgical history." *Id.*

**MEMORANDUM DECISION AND ORDER - 12**

been valid reasons for refusing to accept the more extensive exertional, lifting, and postural limitations that Dr. Stepanski and Dr. Stepanski alone endorsed. *See Ahearn v. Saul*, 988 F.3d 1111, 1118 (9th Cir. 2021) (holding that an ALJ did not err in giving limited weight to the "remote" assessment of an examining psychologist because "[m]edical opinions that predate the alleged onset of disability are of limited relevance").

This analysis does discussion does not, however, explain or warrant finding that the *permanent*[6] abdominal changes Petitioner suffered as a consequence of his recurrent hernias and hernia repairs imposed no limitations on his basic work abilities, including his ability to lift. Before concluding that Petitioner's history of ventral abdominal wall hernias, status post repairs, is not severe, the ALJ must consider the combined opinions of Dr. Sonneland, Dr. Kellogg, and Dr. Neuzil. *Flores*, 49 F.3d at 571.

C. The Remedy

When an ALJ's denial of benefits is not supported by the record, district courts possess discretion under 42 U.S.C. § 405(g) to remand for further proceedings or for an award of benefits. *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014). The proper course turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings and when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. In most cases, however, remand for additional investigation or

---

[6] Dr. Kellogg's report unequivocally indicates that Petitioner's abdominal changes are "fixed and stable" with a permanent partial impairment. AR 558. This conclusion is further bolstered Dr. Neuzil's 2017 evaluation. When seeing Petitioner approximately 16 years after Dr. Kellogg, Dr. Neuzil concluded that Petitioner's condition had not worsened over time and that Petitioner still should not lift more than 25-30 pounds. AR 483, 479.

**MEMORANDUM DECISION AND ORDER - 13**

explanation is preferred.  *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012).  Such remands allow for the ALJ to resolve any outstanding issues in the first instance.

In this case, it remains highly uncertain whether Petitioner was disabled on December 31, 2012.  The medical opinions that the ALJ overlooked in that determining Petitioner's hernia condition was not severe strongly suggest that Petitioner, while limited in his ability to lift, retained the ability to do other work.  AR 479.  Even if the opinions of these doctors are fully credited, legitimate questions remain regarding whether Petitioner's lifting limitations were significant and, if so, whether Petitioner had the RFC to return to past work or transition to other employment as of December 31, 2012.  The Court will, therefore, reverse and remand for further proceedings under the ordinary remand rule.  On remand, the ALJ is directed to reevaluate the medical record consistent with this disposition and consistent with SSR 85-28, 1985 WL 56856.

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 15) are **GRANTED,** and the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

DATED: December 30, 2021

Raymond E. Patricco
U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**